**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:  19-cv-2284

ORKIN, LLC, a Delaware corporation,

      Plaintiff,

v.

GARCIA PEST MANAGEMENT, and
JAMES FRANK GARCIA, an individual,

      Defendants.

---

**VERIFIED COMPLAINT AND JURY DEMAND**

---

Plaintiff Orkin, LLC ("Orkin" or "Plaintiff"), hereby asserts the following claims against Garcia Pest Management ("GPM"), and James Frank Garcia ("Garcia") (collectively "Defendants"), and makes the following allegations as the basis for those claims:

**NATURE OF THE CASE**

This is an action for preliminary and permanent injunctive relief and damages against GPM and Garcia. Orkin's claims arise from Defendants' violations of contractual, statutory and common law obligations to Orkin, the former employer of Garcia. Garcia resigned from Orkin in March 2019 to start his own business, and has solicited Orkin customers, prospects, and employees in clear breach of his contractual obligations to Orkin. The Defendants also have misappropriated Orkin's trade secrets and tortiously interfered with Orkin's contractual relations.  Defendants' actions have caused Orkin irreparable damage justifying imposition of temporary and permanent injunctive relief and damages.

## PARTIES, JURISDICTION, AND VENUE

1. Orkin is incorporated in the State of Delaware and maintains its principal place of business in Atlanta, Georgia.

2. Orkin is, and at all times relevant herein, lawfully doing business in the State of Colorado.

3. Defendant GPM is headquartered in Henderson, Colorado.

4. Defendant GPM is a direct competitor of Orkin.

5. Defendant Garcia is an individual residing in Colorado. Until March 2019, Orkin employed Garcia as Route Manager out of Orkin's Denver, Colorado office.

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, for Plaintiff's claims arising under the federal Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836, *et seq.*

7. This Court has personal jurisdiction over GPM because it is headquartered in the State of Colorado.

8. This Court has personal jurisdiction over Garcia because he resides in the State of Colorado.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(a), as it is the district in which some or all of the alleged conduct occurred.

## BACKGROUND FACTS

10. Orkin is in the pest control, exterminating, fumigating, and termite control business.

## **GARCIA'S EMPLOYMENT AT ORKIN**

11. Garcia was hired by Orkin in 2000 as a Route Manager; Garcia renewed his employment agreement with Orkin in August 2005. **Exhibit 1**, Employment Agreement.

12. Garcia executed an Employment Agreement in exchange for, among other consideration, employment with Orkin. *See* Exhibit 1.

13. Pursuant to his Employment Agreement, Garcia agreed that, for a period of (2) years following his termination from Orkin, he would not, directly or indirectly, "call upon any customer or customers of the Company with whom [he] had contact during [his] employment with the Company for the purpose of soliciting or selling any [Pest Control Services] for the eradication or control of, without limitation, rats, mice, roaches, bugs, vermin, termites, beetles, or other insects, rodents and birds." (Ex. 1 ¶ 5(a).)

14. Pursuant to his Employment Agreement, Garcia understood and agreed that for a period of (2) years following his termination from Orkin, he would not, directly or indirectly, engage in pest control, bed bug control, exterminating, fumigating, or termite control business in any capacity identical with or substantially similar to that capacity in which he was employed with the Company, anywhere in the following territory: The counties of Denver, Larimer, Weld, Boulder, Adams, Phillips, Sedgwick, Jefferson, Arapahoe, Logan, Morgan and Kit Carson all in the state of Colorado, and a radius of ten miles of and from the official geographical boundaries or each aforementioned county ("Territory"). Ex. 1 ¶ 5(c).

15. Pursuant to his Employment Agreement, Garcia understood and agreed that "the nature of the Company's business, customer names, customer lists of the Company, information with respect to the personnel, the methods and systems used by the Company in conducting its

3

business, pricing policies, training and education received by [Garcia], technical bulletins of the Company, manuals, profit and loss information and other related internal business information" ("Orkin's Confidential Information") are confidential and valuable to Orkin. (*Id.* ¶ 7(a).)

16. Pursuant to his Employment Agreement, Garcia agreed, upon the termination of his employment with Orkin, he would (1) return Orkin's Confidential Information; (2) not make copies of such Confidential Information; (3) not furnish such Confidential Information to anyone other than those within Orkin authorized to receive same; and (4) for a period of three (3) years, not use or divulge such Confidential Information.  (*Id.* ¶ 7(a)).

17. Much of Orkin's Confidential Information constitutes a trade secret under Colorado law, in that Orkin derives economic value from such information not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.  Orkin has undertaken reasonable efforts to maintain the confidentiality of its trade secrets.

18. As a Route Manager, Garcia's duties included, managing between 300 and 500 customers within his assigned route, working with customers to schedule services, complete the services in accordance with Orkin policies and state law, complete service tickets for each service performed, manage the relationship with the customers in his assigned route, address any additional customer needs, and grow the business within the route through referrals and other marketing tactics.

19. In his role, Garcia had access to customer information including, lists of the services due to each customer each month, service contract type, contact information for property managers, customer preferences, contract pricing, and service histories for each customer. This

4

information is Orkin's proprietary information that has been gathered and obtained over many years of doing business in the Territory.

20. Garcia had access to hard copies and electronic copies of Orkin's confidential and trade secret information as Orkin provided this information to Route Managers in furtherance of their ability to perform their duties successfully.

21. In March 2019, Garcia resigned from his employment with Orkin.

22. Garcia has not provided Orkin with any confidential information he had in his possession on or before the date of his resignation.

## DEFENDANTS' MISCONDUCT

23. Orkin incorporates by reference each and every allegation contained in the preceding paragraphs as if fully rewritten herein.

24. Shortly after resigning from Orkin, Garcia started his own pest control company, GPM, in direct competition with Orkin.

25. In March 2019, the same month Garcia resigned from Orkin, GPM was registered to do business in the state of Colorado.

26. Garcia is listed as GPM's registered agent with the Colorado Secretary of State.

27. GPM's registered address is within the Territory described in Garcia's Employment Agreement.

28. Since Garcia's resignation and the formation of GPM, several long-standing Orkin customers that had been serviced in the past by Garcia in the Territory have cancelled their service with Orkin. Many of these customers have stated that they decided to go with GPM.

29. Upon learning of Garcia's violation of his employment agreement, Orkin sent him a cease and desist letter reminding him of his obligations under his Agreements. *See* Exhibit 2, Cease and Desist Letter.

30. Counsel for Garcia responded to the Cease and Desist Letter denying that Garcia breached any part of his employment agreement with Orkin.

31. On information and belief, Garcia has continued to call upon Orkin customers with whom he had contact in the years prior to his resignation for the purpose of soliciting and selling pest control services within the defined Territory subsequent to his resignation from Orkin.

32. Since his resignation, Garcia has engaged in the pest control, exterminating, fumigating, and termite control business within the defined Territory.

33. Since his resignation, Garcia has used Orkin's confidential trade secret information to obtain a customer base for his new company, GPM.

34. Orkin has identified more than 50 customer accounts that it has lost in the defined Territory since Garcia resigned from Orkin and registered GPM as a business.

**FIRST CAUSE OF ACTION**
**(Actual and Threatened Misappropriation of Trade Secrets in Violation Of Defend Trade Secrets Act, 18 U.S.C. §§ 1836(b), 1839 – GPM and Garcia)**

35. Orkin incorporates by reference each and every allegation contained in the preceding paragraphs as if fully rewritten herein.

36. Orkin is the owner of certain valuable trade secrets relating to commercial and residential pest control, including, but not limited to, information about pricing, costs, profits, sales, marketing or business plans, budgets, forecasts, customer lists, customer requirements, internally developed methods of customer solicitation, facts relating to existing or prospective

customers, arrangements with customers or suppliers, markets or market extensions, personnel know-how, processes, systems and procedures, methods of operation, equipment, development plans, operating manuals, and other data.

37. The information described above derives independent economic value, actual or potential, for not being generally known to, and not being ascertainable through proper means by, another person who could obtain economic values from disclosure or use of the information.

38. The information described above is also related to products and services that are used or intended for use in interstate commerce.

39. The information described above constitutes trade secrets subject to the protection of the DTSA, 18 U.S.C. § 1832.

40. During his employment, Orkin gave Garcia access to trade secret and other confidential information to facilitate the performance of his jobs and in furtherance of Orkin's business.

41. As a result of his employment, Garcia had access to vast amounts of Orkin's non-public information, including, but not limited to, customer lists, key contacts for customers, customer preferences, pricing, marketing information and strategies, service techniques, methods of operation and production, and other such proprietary and confidential information of Orkin that is not generally known outside of Orkin.

42. Orkin took reasonable measures to keep such information secret including limiting access to information only to certain personnel and by requiring confidentiality agreements signed by any party granted access to Orkin's trade secrets.

43. By signing his employment agreement, Garcia knew that he had a duty to maintain the secrecy of Orkin's trade secrets, and to return all of Orkin's trade secrets in his possession, custody, or control when his employment with Orkin ended.

44. Garcia had actual or constructive knowledge that the information that he obtained during his employment, described above, constituted Orkin's trade secrets.

45. Garcia intended to convert or otherwise misappropriate Orkin's trade secrets for his own economic benefit, as indicated by (a) his contact and solicitation of Orkin clients and business partners after his departure from Orkin and (b) his continued use of Orkin's trade secret information since his departure from Orkin despite Orkin's cease and desist letters.

46. Garcia continues to use trade secrets that he misappropriated from Orkin for the benefit of his company, GPM.

47. As a result of Defendants' unlawful conduct, Orkin has suffered and will continue to suffer damages including loss of competitive advantage, loss of value of its trade secrets, loss of business goodwill, and harm to its reputation.

48. By engaging in the actions described above, GPM and Garcia have violated the DTSA, 18 U.S.C. §§ 1831 – 1839.

49. The harm suffered by Orkin is continuing and cannot be compensated by money damages alone; and thus Orkin is entitled to both damages and injunctive relief under DTSA.

### SECOND CAUSE OF ACTION
### (Breach of Contract – Garcia)

50. Orkin incorporates by reference each and every allegation contained in the preceding paragraphs as if fully rewritten herein.

51. Garcia executed and agreed to the terms of his Employment Agreement. (Ex. 1.)

52. Pursuant to his Employment Agreement, Garcia agreed that, for a period of (2) years following his termination from Orkin, he would not, directly or indirectly, "call upon any customer or customers of the Company with whom [he] had contact during [his] employment with the Company for the purpose of soliciting or selling any [Pest Control Services] for the eradication or control of, without limitation, rats, mice, roaches, bugs, vermin, termites, beetles, or other insects, rodents and birds." (Ex. 1 ¶ 5(a).)

53. Pursuant to his Employment Agreement, Garcia agreed that, for a period of two (2) years following his termination from Orkin, he would not "perform services which are identical with or substantially similar to those services which [he] performed during the last two (2) years of [his] employment by the Company," anywhere within the Territory. (Ex. 1. ¶ 5(c).

54. Pursuant to his Employment Agreement, Garcia agreed, upon the termination of his employment with Orkin, he would (1) return Orkin's Confidential Information; (2) not make copies of such Confidential Information; (3) not furnish such Confidential Information to anyone other than those within Orkin authorized to receive same; and (4) for a period of three (3) years, not use or divulge such Confidential Information.

55. All conditions precedent to Garcia's obligations under his Employment Agreement have been performed by Orkin or waived by Garcia.

56. GPM and Garcia have solicited customers of Orkin in order to secure business for GPM, to the detriment of Orkin. This solicitation violates the Agreement's customer non-solicitation provision.

57. During his employment with Orkin, Garcia was privy to certain confidential and proprietary information, which was compiled at great time, cost, and expense to Orkin and which Garcia expressly agreed to protect.

58. Garcia has breached the Employment Agreement by using Orkin's confidential and proprietary information to his benefit and for the benefit of GPM and in competition with Orkin.

59. The actions of Garcia, as set forth above, constitute breaches of the customer non-solicitation and confidentiality provisions in the Employment Agreement.

60. The terms and conditions of the Employment Agreement are reasonable and necessary to protect Orkin's legitimate business interests.

61. As a direct and proximate result of the breaches of his Employment Agreement, Garcia has caused damage to Orkin in an amount to be determined at the hearing or trial of this matter, including but not limited to, a loss of customers, lost profits, and additional expenses or damages. Orkin also is entitled to its attorney's fees in bringing this action pursuant to the Employment Agreement.

62. In addition, as a direct and proximate result of Garcia's breach, he has caused Orkin to suffer substantial and irreparable harm to its business and economic interests for which monetary damages are an inadequate remedy and which warrant the imposition of preliminary and permanent injunctive relief.

### THIRD CAUSE OF ACTION
**(Misappropriation of Trade Secrets, Colorado Uniform Trade Secrets Act -- GPM and Garcia)**

63. Orkin incorporates by reference each and every allegation contained in the preceding paragraphs as if fully rewritten herein.

64. Orkin's proprietary or confidential information, including but not limited to information relating to its customer identities, customer needs, pricing, customer lists, customer contracts, costs, marketing research, marketing plans and strategies, and pricing strategies, are trade secrets within the meaning of the Colorado Uniform Trade Secrets Act.

65. As a result of his employment with Orkin, Garcia was given access to Orkin's trade secret information.

66. The trade secret information to which Garcia had access while working with Orkin is information not generally known or available to anyone outside Orkin.

67. Orkin derives independent value, actual or potential, from the trade secret information described herein not being generally known, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

68. Orkin has taken more than adequate or reasonable efforts under the circumstances to protect the confidential nature of the trade secret information, including having Garcia along with other employees sign agreements that include confidentiality, non-disclosure, non-compete and non-solicitation clauses prohibiting access to, use, and disclosure of such information outside Orkin.

69. Garcia subsequently used and disclosed to GPM Orkin's trade secrets. Accordingly, GPM is in possession of the foregoing Orkin trade secrets, which are subject to confidentiality agreements in which Garcia expressly acknowledged and agreed to their confidential nature.

70. Defendants' actions constitute a misappropriation of trade secret information in violation of the Colorado Uniform Trade Secret Act, and that violation has benefited and/or will

benefit Defendants and cause and/or continue to cause damage to Orkin in an amount to be proven at trial.

72. As a direct and proximate result of Defendants' misappropriation of Orkin's trade secrets, Orkin has been or will be damaged in an amount to be determined at the hearing(s) or trial of this matter.

72. As a direct and proximate result of Defendants' misappropriation of Orkin's trade secrets, which is ongoing, Orkin is suffering or will suffer substantial and irreparable harm to its business and economic interests for which monetary damages are an inadequate remedy and which warrant the imposition of a preliminary and permanent injunctive relief.

73. Unless enjoined by this Court, Defendants' acts of misappropriation will continue and Orkin will continue to suffer irreparable harm.

74. Orkin is entitled to an award of treble, punitive and/or exemplary damages based on the malicious nature of Defendants' misappropriation of trade secrets and/or because it amounts to a conscious disregard of a known right of Orkin.

### FOURTH CAUSE OF ACTION
**(Tortious interference with contract – GPM and Garcia)**

75. Orkin incorporates by reference each and every allegation contained in the preceding paragraphs as if fully rewritten herein.

76. Defendants, individually and collectively, through their agents, representatives and/or employees, have intentionally interfered in the business relations of Orkin by purposely inducing and seeking to cause Orkin's customers and/or prospective customers from entering into or continuing a business relationship with Orkin.

77. Upon information and belief, Defendants have sought, and are continuing to meet with, Orkin's customers and/or prospective customers to garner their business.

78. There exists no privilege or justification for Defendants' actions to intentionally interfere in Orkin's business relations.

79. Defendants' tortious interference with Orkin's business relations has resulted in, and will continue to result in, Orkin being irreparably damaged, including, but not limited to, damage to its reputation, its contracts, its business opportunities and monetary damages as yet undetermined.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Orkin, LLC. respectfully requests the entry of judgment in its favor and against Defendants Garcia Pest Management and James Frank Garcia, and that the Court:

(1) Award judgment in favor of Plaintiff on all claims asserted;

(2) Grant injunctive relief prohibiting Defendants from using, disclosing or misappropriating trade secret, proprietary and/or confidential information belonging to Plaintiff and prohibiting Garcia from any further breach of his Employment Agreement, including the applicable non-solicitation provisions, non-compete provisions, and non-interference provisions;

(3) Award Plaintiff all actual, consequential, special, liquidated and exemplary damages as may be provided by law or contract;

(4) Enter Judgment against Defendants for Plaintiff's costs and reasonable attorneys' fees as provided under Garcia's Employment Agreement and/or other applicable law;

(5) Award Plaintiff prejudgment, post judgment and other interest as permitted by law; and

(6) Award Plaintiff such other and further relief as the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury in this action of all issues so triable.

Respectfully submitted this 9th day of August, 2019.

*s/ Timothy M. Kratz*
Timothy M. Kratz
Melisa H. Panagakos
JACKSON LEWIS P.C.
950 17th Street, Suite 2600
Denver, Colorado 80202
Telephone: (303) 892-0404
Facsimile: (303) 892-5575
Tim.Kratz@jacksonlewis.com
Melisa.Panagakos@jacksonlewis.com
*ATTORNEYS FOR PLAINTIFF*

## VERIFICATION AND ACKNOWLEDGMENT

I swear and affirm under penalty of perjury of the laws of the United States, that I am a representative of the Plaintiff in the within action; that I have read the foregoing Verified Complaint and Jury Demand, and reviewed the attached exhibits. I swear under penalty of perjury under the laws of the United States that the factual information set forth in the Verified Complaint and Jury Demand is true and correct, and the attached exhibits are true and correct copies of what they are described to be in the Verified Complaint.

ORKIN, LLC.

_____
Robert Esparza, Branch Manager

08/08/19
(Date)